## EASTERN DISTRICT,

## 1855.

PRESENT:

Hon. ETHER SHEPLEY, ll. d., Chief Justice.
Hon. JOHN S. TENNEY, ll. d., ⎫
Hon. JOHN APPLETON, ⎬ Associate Justices.
Hon. RICHARD D. RICE, ⎭

## COUNTY OF PENOBSCOT.

### Oldtown & Lincoln Railroad Co. *versus* Veazie.

Where the Act of incorporation requires the company's capital stock to consist of not less than a given number of shares, assessments made upon subscriptions to such stock *before* the required number is taken, are illegal, and no action can be maintained to recover them.

A subscription for a certain portion of such capital stock, on condition that a *proposition* made by the subscriber shall be accepted, which was in fact but the *basis* of a contract, but when drawn up in form was repudiated by the subscriber as being variant from the proposition, is invalid, although *the proposition* may have been accepted by the corporation.

The plea of the *general issue* to an action by a corporation admits only their power to sue and be sued. It does not admit that such plaintiff has performed conditions by which contracts made with it have become binding.

Oldtown & Lincoln Railroad Co. *v.* Veazie.

The alteration of the charter of a corporation, requiring less amount of capital stock, whereby the amount required is subscribed for, cannot make *previous subscribers* to its stock liable as *shareholders*, who were not such before the alteration.

Thus, where the defendant subscribed for 1,000 shares in the capital stock of the plaintiff corporation, *when* the charter required 11,000 shares to be the minimum, and somewhat less than 10,000 were in fact agreed to be taken and paid for, and the company was organized, the subscriptions accepted and assessments made upon them; and afterwards an alteration in the charter was made by the Legislature and accepted by the corporation reducing the minimum of the capital stock required to 8,000 shares; in an action to recover such assessments on defendant's shares, made *before* and *after* such alteration of the charter; *it was held* —

1st. That the minimum number of shares of capital stock required by the charter at the time the subscription was made, was a condition precedent to be fulfilled by the corporation before the subscription was liable to assessment.

2d. That the alteration and acceptance of the charter requiring only 8,000 shares for the minimum of the capital stock, and although an amount exceeding that number was taken, would not authorize the corporation to assess a subscription made under the original charter.

3d. Nor will the defendant be estopped to set up the original conditions of his subscription, although he may have exhibited himself as a shareholder and officer in the corporation, and had contributed towards payment of the expenses of the corporation. The requirements of the charter cannot be waived.

4th. That corporators by any acts or declarations cannot relieve the corporation from its obligation to possess the capital stock required by its charter.

ON REPORT from *Nisi Prius*, HATHAWAY, J., presiding.

ASSUMPSIT, to recover assessments and interest on defendant's subscription for one thousand shares of the capital stock in the Oldtown & Lincoln Railroad Company. The writ bore date of Dec. 9, 1854, and the cause was presented under the general issue.

In evidence was offered a charter, granted by the Legislature, on March 8, 1852, by which the defendant and others were made a body corporate by name of the Oldtown & Lincoln Railroad Company, for the purpose therein named.

By the second section of the charter, it was provided that the capital stock of said corporation should consist of not less than eleven thousand, nor more than fifteen thousand shares.

On September 8, 1852, after notice had been given as

required, the charter was accepted, and defendant and eight others were chosen as directors.

At this meeting the following vote was passed: "whereas the corporators of this charter have heretofore directed subscriptions to the capital stock of said corporation, according to which a subscription has been obtained of shares exceeding the minimum number named in said charter, and whereas a large majority of said stock is represented at this meeting, and a majority of the persons subscribing are now present; therefore it is voted that said subscriptions be accepted and made valid between said subscribers and this corporation, and that they be admitted as the stockholders, at this meeting."

A code of by-laws was also accepted, and article 9th provided that the capital stock should be divided into shares of twenty dollars each, subject at any and all times to the assessments as ordered by the board of directors.

The second section of the charter was amended in Sept. 1853, so that the capital stock should consist of not less than eight thousand shares, nor more than twenty-five thousand shares, the par value being thereby fixed at $20 each, which was accepted by the directors on Oct. 1, 1853.

A paper signed by defendant, under date of August 13, 1853, for one thousand shares, $20,000, of the following tenor, was in evidence.

"OLDTOWN & LINCOLN RAILROAD COMPANY. *Subscription.*— Whereas, it is proposed to build an up river railroad, so called, and an Act of incorporation has been obtained from the Legislature of Maine, entitled 'An Act to incorporate the Oldtown & Lincoln Railroad Company.'

"We the subscribers severally agree to take the number of shares of the capital stock in said corporation which are affixed to our respective names, and to pay to the treasurer of said company, when they have one, or to whoever may be entitled to receive the same, all such legal assessments on each of said shares, not exceeding twenty dollars on each share, as shall be made by the future government of said

corporation after the same has been organized according to said Act."

The subscription books to the capital stock were put in, on which were subscriptions against persons who were responsible for 9476 shares only, excepting an additional subscription for 6000 shares, made by defendant on Sept. 17, 1853, which was denied to be valid by the plaintiffs.

According to the records, defendant was a director from the organization of the company to August 7, 1854, and president until July 8, 1854, when he was removed by the directors.

On August 16, 1853, defendant submitted to the directors the following proposition, which was accepted; and they voted "that ——— committee be appointed to close the contract for the same."

" Build railroad from a point in Milford to a point in Lincoln, each point to be selected by D. A. Sanborn, engineer appointed by the directors; the road to be constructed under the direction of said engineer, according to the plans and specifications to be furnished by him, and when finished, to compare favorably in point of grades, curves and workmanship, with the best roads in New England; meaning to embrace every thing appertaining to the construction of said road, and operating the same, except the land damages and fencing, and the furniture thereof.

" Said road to be completed by the 1st day of December, 1854, ready for the furniture.

" Price, $12,000 per mile, and any addition above $4,400 per mile that the rails may cost.

" Payment, the present stock subscription, and balance in stock of said road, with the privilege of using mortgage bonds of the road to buy the rails, said mortgages to be provided for at maturity by me."

The contract afterwards drawn up for defendant to sign, was objected to as not in conformity with his proposition and was never signed.

The defendant, on Sept. 17, 1853, before the meeting of

the directors on that day, sent in a paper, which, after setting forth the proposition he had made to build the road, and the acceptance thereof by the directors, concluded as follows:—"And inasmuch as the subscription books have not been all returned and it cannot be ascertained precisely how much of the stock of said road remains not subscribed for by others, I hereby agree to take and subscribe for six thousand shares more or less, intending to embrace all the rest and residue of the fifteen thousand shares authorized by the Act of incorporation not subscribed for by others. Price of shares limited to twenty dollars."

He also filed with them a protest against any action of theirs tending to impair his rights as subscriber to 6000 shares more or less of the capital stock, he claiming the right to subscribe therefor as he had done.

On that day the directors voted to petition the Legislature for the amendment of their charter as above.

At a meeting called to choose directors, in August, 1854, the defendant claimed to represent the above 6000 shares, and threw his vote accordingly which was rejected, and afterwards two antagonistic boards of directors were chosen.

In December of the same year, this action was commenced.

There was evidence introduced as to money expended in and about the road, and payments of money by defendant, and the records of the directors as to the several assessments, amounting to $20 per share, on the 1000 shares, the last subscription of defendants never having been assessed.

There was much other evidence not bearing upon the points on which the decision turned.

It was agreed, that if upon the testimony the defendant was legally holden to pay the assessments sued for, or any part of them, a default should be entered for such sum as the Court might think proper, otherwise the case to stand for trial.

*A. W. Paine*, with whom was *W. P. Fessenden*, for defendant, objected to the maintenance of this action:—

1. Because the required amount of subscriptions to the capital stock had never been obtained, and no assessment could therefore be legally binding. *Salem Mill-dam Co.* v. *Ropes*, 6 Pick. 23; *Central Turnpike Cor.* v. *Valentine*, 10 Pick. 142; *W. & N. Railroad Co.* v. *Hinds*, 8 Cush. 110; *Ken. & P. Railroad Co.* v. *Jarvis*, 34 Maine, 360.

2. The additional Act of Sept. 27, 1853, having been passed after the subscription was signed, could not affect that subscription nor give an effect to it which it did not otherwise have. *U. L. & C. Co.* v. *Towne*, 1 N. H. 44; *H. & N. H. Railroad Co.* v. *Cammell*, 5 Hill, 383; *Mid. Turnpike Co.* v. *Lock*, 8 Mass. 268; *same* v. *Walker*, 10 Mass. 390; Angell on Cor. 483, § 10.

3. That no waiver could be made or was in fact made by defendant, which had or could have an effect to give validity to the Act of the Legislature which was otherwise unconstitutional or invalid.

4. The additional Act was never legally accepted by the company until after ten assessments were made, the directors having no power to do such an act as to accept of the amendment.

5. The contract and subscription for 6000 shares were valid and binding, and being so, the contract made with Fairbanks & Morgan was illegal, as were also the assessments made to meet its calls. The assessments were made upon a wrong basis by excluding these shares. The votes by defendant for said shares were legally cast and another board of directors was elected than those who acted in making the last ten assessments.

The case was further argued by defendant's counsel as to the illegality of the several assessments.

*J. A. Peters*, for plaintiffs.

SHEPLEY, C. J. — The corporation was created by an Act approved on March 8, 1852, with a capital stock to "consist of not less than eleven thousand nor more than fifteen

thousand shares." The charter was accepted on September 8, 1852, when the corporation was organized and a vote, containing a recital that "a subscription has been obtained of shares exceeding the minimum number named in said charter," was passed, "that said subscriptions be accepted and made valid between said subscribers and this corporation." This recital of the amount then subscribed is ascertained to have been incorrect. The capital stock required has not been obtained.

The report of the case states "the subscription on said books was of persons who were responsible for 9476 shares, and amounts in all to $189,520, besides 6000 shares additional which said defendant hereinafter introduces." The subscription for the 9476 shares appears to have been made under date of August 13, 1852, in these words; — "We the subscribers severally agree to take the number of shares of the capital stock in said corporation which are affixed to our respective names and to pay to the treasurer of said company, when they have one, or to whoever may be entitled to receive the same, all such legal assessments on each of said shares, not exceeding $20 on each share, as shall be made by the future goverment of said corporation after the same has been organized according to said Act."

The agreement is to take the number of shares of the capital stock, and that must have had reference to the capital stock required by the charter. The engagement was to take such a part of that capital. The shares to be assessed were the shares of that capital. The agreement to pay "all such legal assessments on each of said shares," was to pay them on shares of that capital. There must therefore have been such a capital stock obtained before the subscriptions could be binding or any legal assessments could be made. The subscription having been made before the corporation was organized, was necessarily as well as in terms subject to a condition, that the party to accept it should have a legal existence, and should obtain the capital required by its charter and referred to in the subscription, by which it became

a part of it. That condition, required both by the charter and the contract, has never been performed by the corporation, which has never been in a situation to make a legal assessment on such shares or to enforce payment of the subscriptions, unless the additional subscription of the defendant for six thousand shares can be regarded as binding.

The defendant, on September 17, 1853, after reciting a proposal made by him to build the road, and an acceptance of it by the directors on August 16, 1853, subscribed "for six thousand shares, more or less, intending to embrace all the rest and residue of the fifteen thousand shares authorized by the Act of incorporation, not subscribed for by others." This subscription was predicated upon the completion of the contract proposed. If that was not so accepted by the corporation, so as to become a valid contract between the parties, it is not contended that this subscription was binding. The corporation does not allege that the deficiency of capital stock was supplied by it. It denies both the acceptance of the proposed contract, and the validity of the subscription for those shares; while the defendant insists that his proposal was accepted, that the contract for building the road was completed, and that he is entitled to those shares.

Upon examination of the defendant's proposal, it appears to have been so general in its terms, that it could not well be regarded as more than a basis for a contract to be properly drawn and executed, prescribing the manner in which the road should be constructed and the work performed. It appears to have been so regarded by the directors, who in their vote, containing the alleged acceptance of it as a complete contract, "accept the proposition now made by Samuel Veazie to build the railroad from Milford to Lincoln, and that ———— committee be appointed to close the contract for the same." It is accepted only as a proposition, to form the basis of a contract to be closed thereafter. The defendant appears also to have so regarded it at that time. The committee caused a contract to be drawn and

submitted to the defendant for his signature, which he alleged was not drawn according to his proposal, and he therefore refused to sign it, and not because the contract had been already completed. Another unsuccessful attempt appears to have been made to have a contract drawn and signed. The defendant, on September 17, 1853, submitted to the directors a written statement, claiming that his proposal had been accepted and become a binding contract; and in it he assigned as his reason for refusing to sign the contract as presented by the committee, that it was " widely variant from his proposition, and for this reason he objected, and still objects to signing the same." The directors thereupon resolved, " that the vote of the directors accepting said proposal of said Veazie, is hereby reconsidered and made nugatory; and the said Veazie is thereby to consider his agreement to subscribe for the deficiency of said stock, as null and void." These proceedings present only an ineffectual attempt to make a contract for building the road, the basis for one having been agreed upon, and the parties having disagreed, when they attempted to complete a contract containing the details of the work and the manner in which it was to be performed. The foundation upon which the subscription for those shares rested having fallen, the subscription falls with it. The rights of neither party can be affected by those ineffectual attempts to make a valid subscription and contract.

The difficulty before noticed in the way of a recovery by the corporation will remain, unless it can be otherwise overcome. This has been attempted in different modes.

It is insisted that the general issue having been pleaded, that is an admission of the existence of the corporation with the capacities required by the charter.

A plea of the general issue does, in our practice, admit the existence of the corporation with a capacity to sue and be sued. It cannot be an admission of more than this. There is nothing in the plea authorizing it. The decided cases do not. The plea contains no language, from which

an inference can be drawn, that the corporation has performed the duties required of it in other respects. Or that it has performed its part of a condition, by which a conditional contract made with it has become binding.

It is also alleged, that the corporation has been relieved from the performance of that condition by the Act approved on September 27, 1853, c. 193, and that the defendant's subscription thereby became binding.

By that Act the charter was so amended, that the capital stock might consist of not less than eight thousand nor more than twenty-five thousand shares. The Act was accepted by the stockholders on August 7, 1854. The corporation might accept a modification of its charter, by which its rights and obligations were varied and new duties imposed. And the rights and duties of its corporators might thereby be increased or diminished. But those could not thereby be made shareholders in its capital, who were not such before. Nor could any contract made between the corporation and one of its corporators be thereby altered or affected. When that Act was accepted, the defendant and others by their subscriptions had never become shareholders in its capital stock; they had only agreed to become such upon condition, that the least sum required for its capital should be subscribed. That condition not having been performed, when the additional Act was passed and accepted, they were not then shareholders, and could not thereby be made such. The Legislature did not attempt to make them such. It might as well have attempted to alter a contract made between the corporation and one of its members respecting the construction of the road, as respecting a contract to pay a part of its capital. If the corporation, being a party to a contract with one of its corporators, might by the assistance of the Legislature absolve itself from the performance of any part of the contract, it might from the whole, and require payment of the money subscribed, without allowing the subscriber to derive any benefit from it.

It is the charter only and the rights and liabilities of the

corporation and of its corporators, as such in consequence thereof, that can be varied by an Act of the Legislature; and not the private contracts made between the corporation as one party and of its corporators as the other. And there can be no distinction between contracts to pay money for its stock, and contracts to pay it for any other purpose.

There is nothing in the case of the *Meadow Dam Co.* v. *Gray*, 30 Maine, 547, in the least degree opposed to these positions. That corporation was, by the Act of July 31, 1846, authorized to erect a dam across the south branch of Castine river to exclude the tide waters from the flats above, thereby rendering them capable of cultivation. The charter did not require any amount of capital to be subscribed. The defendant having subscribed and agreed to take one share, thereby became a shareholder without any condition to be performed by the corporation. By an additional Act, approved on August 10, 1848, the corporation was required to construct a sufficient gate or lock for the passage of vessels or boats through the dam. Objection was made by the defendant to the payment of his subscription, because the liability of the stockholders was increased by the burden imposed by the additional Act. The Court decided, that, as he had become a stockholder, his assent to the additional Act must be considered as given by the acceptance of a charter, in which the Legislature reserved the right to amend or alter it. The question presented was, whether the defendant had thereby been discharged from the performance of an existing legal contract; not whether he should thereby be made a party to one not legally binding. Nor whether, that to which he had assented should be waived without his consent. His contract was not in the least affected by the Act, while the responsibilities of the corporation of which he was a member were increased, and so might his own be as corporator indirectly, but not as a party to a contract.

It is also insisted, that the defendant, by various acts and declarations, has exhibited himself as a stockholder and

officer of the corporation, and that he is thereby estopped to deny the authority of the corporation to collect the subscriptions to its stock, or that he has waived all objections to it.

The defendant does appear by written documents signed by him, and by acting as an officer and shareholder, and by the payment of money, to have asserted, that the corporation was in a condition to do many acts, and to proceed to build the road.

These declarations appear to have been made and the acts to have been performed in the character of an officer or corporator of the corporation, which was allowed until December 31, 1857, to complete the location of the road; and there was no other limitation of the time for obtaining its entire capital stock. Corporators may, unless prohibited by the charter, organize and put the corporation into a condition to sue and be sued, to enter into contracts to secure the capital required, to employ agents to do it, and to procure information by surveys or otherwise, and exhibit the same to the public as an inducement to subscribe for shares, without having secured the capital required to authorize proceedings for the accomplishment of the main design. The danger in such cases is, that it may have nothing with which it can pay expenses. If the corporators do many such acts and contribute to pay the expenses, and do it in anticipation of having the amount accounted for when the capital shall be obtained, it would afford no satisfactory proof that they intended to proceed with the main enterprise without the capital required by the charter, or that they had assented to assessments on the shares for that purpose. The defendant and others might have proceeded, as they would seem to have done, upon a misapprehension of the facts, supposing that the capital had been obtained, when it had not been, and without any intention to attempt to have assessments made, or the road built, until the capital had been obtained. No estoppel *in pais* or waiver can justly be allowed to deprive a person of rights, who has

been acting under a misapprehension of facts. There is nothing presented in the report of the case necessarily inconsistent with a full determination to require a strict adherence to the charter, and the terms of the subscription.

There is, however, a more perfect answer to this position. It is, that the corporators could not by any acts alleged to operate by way of waiver or estoppel, relieve the corporation from its obligation to have the capital required by its charter. If a vote had been passed by them with entire unanimity, that they would waive all objection on account of a deficiency of capital, and that they would proceed to make assessments on the shares subscribed and to build the road, it would have been but a violation of the charter, and illegal and void. Otherwise they might by vote relieve the corporation and themselves from all obligation to have any capital, and acting upon the same rule, they might relieve themselves and the corporation from any obligation imposed by the government, and make their charter, whatever they desired it to be, however different from that granted to them by the State.

Upon the testimony presented, the action cannot be maintained; but according to the terms of the report it is to stand for trial.