HOAGLAND *v.* THE CINCINNATI AND FORT WAYNE RAILROAD COMPANY.

The law providing for the organization of railroad companies, and for receiving subscriptions to the stock thereof, enters into, forms part, and determines the effect of, subscriptions, as fully as if it were written out and formed, in terms, a part of the contract of subscription.

When, under the general railroad law of 1852, an incipient organization has been effected, and 50,000 dollars or more of the capital stock subscribed, and articles of association duly executed, and a copy thereof filed in the office of the Secretary of State, the corporation acquires a competent legal existence, with all the rights and powers conferred upon it by that law, including the right to demand and sue for calls or installments upon the stock subscribed, whether the whole amount requisite to complete the enterprise has been subscribed or not.

Hoagland *v*. The Cincinnati and Fort Wayne Railroad Co.

APPEAL from the *Allen* Circuit Court.

WORDEN, J.—This was an action by the railroad company against the appellant, upon a subscription to the capital stock of the company. Judgment for the plaintiff.

The defendant, it appears, was one of the subscribers to the articles of association, and subscribed for ten shares of stock, at 50 dollars per share. The articles of association fixed the amount of capital stock at 2,500,000 dollars, to consist of shares of 50 dollars each, with a provision for the increase of the stock from time to time. The terms of the subscription required payment to be made to the company, or the board of directors, "in such proportions, and at such times, as they or their successors might from time to time order or require." Subscriptions to the articles of association were received to the amount of only 60,800 dollars.

The ground relied upon for a reversal is, that as the whole amount of the capital stock, as fixed in the articles of association, has not been subscribed for, no calls can be made, nor will an action lie upon the subscription thus made.

In support of this position, several authorities are cited, and amongst others, the case of *Stoneham Branch Railroad Co.* v. *Gould*, 2 Gray 277. In the case cited, it was said by the Court, that "it is a rule of law too well settled to be now questioned, that when the capital stock and the number of shares are fixed by the act of incorporation, or by any rate, or by-law passed conformably to the act of incorporation, no assessment can be lawfully made, on the share of any subscriber, until the whole number of shares has been taken." The following cases, also cited by counsel for the appellant, tend more or less strongly to sustain the position assumed. *Salem Mill Dam* v. *Ropes*, 6 Pick. 23, and the same case, 9 Pick. 187; *Central Turnpike Co.* v. *Valentine*, 10 *id*. 142; *Cabot & West Bridgefield Bridge Co.*. v. *Chapin, et al.*, 6 Cush. 50; *Worcester & Nashua R. R. Co.* v. *Hind*, 8 *id*. 110; *Old Town &*

*Lincoln R. R. Co.* v. *Veazie,* 39 Maine 571; *Penobscot & Ken R. R. Co.* v. *Dunn,* 39 Maine 595; *Littleton Man. Co.* v. *Parker,* 14 N. H. 543; *Contoocook Valley R. R. Co.* v. *Barker,* 32 N. H. 363; *New Hampshire Central R. R.* v. *Johnson,* 10 Foster 390. See, also, 4 Man. Grang. & Scott 404; 5 Mees. & Welby, 2; 1 Mood. & Mal. 151; 6 Bing. 776.

Whatever may be the intrinsic merits of these decisions, and whatever weight should be attached to them as the adjudications of Courts of unquestioned ability, still they should not be allowed to control, if our statute, under which the subscription in question was made, will not admit the application of the doctrine established by them.

It may be remarked, that the law providing for the organization of railroad companies, and for receiving subscriptions to the stock thereof, enters into, forms part, and determines the effect of subscriptions, as fully as if it were written out and formed, in terms, a part of the contract of subscription. *Woolfaulk* v. *The State,* 10 Ind. 532.

The first section of the act for the incorporation of railroad companies, (1 R. S. 1852, p. 409,) provides, that when stock to the amount of 50,000 dollars (or 1,000 dollars for each and every mile of the road,) shall have been subscribed, the subscribers shall elect directors, and subscribe articles of association, setting forth the name of the corporation, the amount of the capital stock of the company, (which may afterwards be increased,) the number of shares of which the stock shall consist, the number and names of the directors, the names of the places from and to which the proposed road is to run, and the counties through which it is to pass, and its length, as near as may be.

The second section provides for filing a copy of the articles of association in the office of the Secretary of State. This being done, the organization is perfect. The corporation is brought into existence with all the rights and powers con-

Hoagland *v.* The Cincinnati and Fort Wayne Railroad Co.

ferred upon it by the act in question; among which is the power to procure the right of way, construct, and operate the proposed road. All this may be done, although only 50,000 dollars has been subscribed to the capital stock, whatever may be the amount fixed upon as the entire capital stock. This would seem to imply, necessarily, the power to collect the subscriptions thus made, in order to proceed with the work. But the right to thus make collections is not left to implication. The eighth section provides, that "it shall be lawful to call in and demand from the stockholders respectively, any sums of money by them subscribed, in such payments or installments as the directors shall deem proper."

Thus the law provides for the organization of the company when 50,000 dollars shall be subscribed to its stock, (let the amount of capital stock be what it may,) and for the exercise of its corporate franchises, as well as for the calling in of the amounts subscribed. The contract of subscription must be deemed to have been made with a view to the law, and the right of the company to call in such subscriptions; and it would seem to be clear that a subscription for the whole amount of the capital stock fixed upon, can not be a condition precedent to the right of the company to collect subscriptions. But authorities are not wanting to support this view; indeed, the only authorities that we are aware of, based upon statutes similar to the one under consideration, fully sustain it. *The Newcastle &c., Turnpike Company* v. *Bell*, 8 Blackf. 584, is in point. There the corporation was created with a capital stock of 100,000 dollars, but with the right to exercise its corporate franchises when 300 dollars should be subscribed. It was held, that a subscription of the whole amount was not a condition precedent to the right of collecting the subscriptions made. The case of *The Schenectady, &c., Plank Road Co.* v. *Thatcher*, 1 Kernan, 102, is also directly in point. The following extract from the opinion of the Court in that case

will show the point decided, and the ground of the decision, being in every respect applicable here. Says *Parker*, J., delivering the opinion:

"Nor was it necessary that the whole amount of stock should have been subscribed, before calls for installments could be made. The act not only makes no such requirement, but it expressly permits the directors of any company incorporated, &c., to require payment of the sums subscribed to the capital stock, at such times and in such proportions as they shall see fit. It first authorizes an incorporation to take place in subscribing a certain amount, and then, in section 39, authorizes the directors to require payment of the 'sums subscribed.' The decisions, therefore, in the Courts of *Massachusetts*, relied on by the defendant's counsel, are entirely inapplicable. The same amount of stock subscriptions which is necessary to the organization of the company, is all that is requisite, as preliminary to a call for its payment by installments."

In the case of *Kennebec, &c., R. R. Co.* v. *Jervis*, 34 Maine, 360, it was held, that "where the amount of stock, which a corporation may hold, is not *fixed in the charter*, and the corporation has voted what the amount should be, it is not requisite, in order to a valid assessment upon the shares of a member, that the whole of that amount should have been subscribed for, although his subscription was made after the vote was passed."

These considerations and authorities would seem to place the point beyond all doubt; but there is another provision in the statute which renders the conclusion arrived at irresistible. The nineteenth section of the statute in question authorizes the company to borrow money for completing or operating the road, and to issue her bonds therefor, "and the directors of the company may confer on any holder of any bond issued for money borrowed as aforesaid, the right to convert the

Boyle *v.* The Crawfordsville, Frankfort and Fort Wayne R. R. Co.

principal due, or owing thereon, into stock of said company, at any time not exceeding fifteen years from the date of said bond, under such regulations as the company may adopt."

This provision clearly excludes the idea that the whole of the stock should be subscribed for, before calls can be made on that which is taken by subscription.

A part of the stock may be taken by subscription, and a part by the conversion of bonds into stock.

The subscribers for stock agree, having in view the law, that they will take a given number out of the whole number of shares fixed upon, not upon condition that the whole number shall be subscribed for, but with the express provision in the law, which constitutes a part of their contract, that a part may be taken by the conversion of bonds into stock.

We are of opinion that there is no error in the record.

*Per Curiam.*—The judgment below is affirmed, with costs.

*Moses Jenkinson, J. Brackenridge,* and *William H. Combs,* for the appellant.

*Withers & Morris,* for the appellee.