### SOMERSET RAILROAD COMPANY *vs.* JOSEPH CLARKE, JR.

*Corporate shares; number must be fixed before assessment thereon.*

If the charter of a corporation does not definitely fix the number of shares which shall compose its capital stock, this must be done by the directors or stockholders before there can be any valid assessment laid upon the shares of subscribers to its stock.

Where it is evident either that there has been no prescribed number of shares established as aforesaid, or else that the number is six thousand shares, and it is admitted or proved that so many shares have never been subscribed for or taken, any assessment upon the shares that have been subscribed for will be void.

ON REPORT.

This case was submitted to the court to be determined upon such of the evidence adduced as is found legally admissible, and such judgment to be entered thereon as the court may think the rights of the parties require.

This suit was brought to recover $3,960 and interest, as the unpaid balance due upon several assessments on four thousand dollars of stock in the plaintiff corporation, at a par value of $100 per share. The defendant's subscription was expressed in dollars and not in a specified number of shares. The writ alleged a subscription by him in April, 1868, " to be paid at such times, in such in-

Somerset Railroad Company v. Clarke.

stalments, and to such persons as thereafter required by a vote of the company ; " that no assessment was to be made till a *bona fide* subscription of $300,000 had been obtained, and certain other conditions were affixed, all of which it was claimed had been complied with by the corporation ; but that the defendant refused to pay any of his subscription ; in consequence of which refusal his forty shares had been sold at public auction, agreeably to the charter and by-laws of the company, for one dollar per share ; and that this action was brought to recover the balance aforesaid, and interest on each instalment from the time it became payable.

The defendant contended that there was an agreement for the company to take his $4,000 in railroad sleepers, which he was always ready and willing to deliver when the corporation fulfilled its part of the contract ; but he further objected that all of the assessments were void for numerous reasons ; those considered and acted upon by the court, and the facts upon which they rest, are fully stated in the opinion.

*J. H. Webster*, for plaintiffs.

Though the defendant's subscription was made prior to the organization of the company, yet in the organization and subsequently, he was recognized as the owner of forty shares, which was an acceptance of his proposal and a completion of the contract. It appears by the report of the committee, made April 18, 1868, that $316,500 had been *bona fide* subscribed and the condition of Clarke's subscription complied with ; and it was then voted that all persons who had subscribed to the stock be admitted as members of the company. That completed the contract, so as to bind both parties to its fulfillment. *Penobscot R. R. Co.* v. *Dummer*, 40 Maine, 172 ; *K. & P. R. R. Co.* v. *Palmer*, 34 Maine, 366 ; *Atlantic Mills* v. *Abbott*, 9 Cush. 423 ; *Ladies' Institute* v. *French*, 16 Gray, 196.

By the charter, § 4, a personal obligation is imposed on the subscriber, to pay any balance due after the sale of his shares for non-payment of assessments thereon. *K. & P. R. R. Co.* v. *Kendall*, 31 Maine, 470.

From the course pursued by defendant's counsel at the trial, we presume he will contend that the amount of the capital stock and the number of shares have never been fixed, and several Massachusetts cases will be cited upon this point, especially *Troy & Greenfield R. R. Co.* v. *Newton*, 8 Gray, 596.

No provision of the Revised Statutes of Maine requires that this should be done before any assessment can be made. In the charters of the several Massachusetts companies was a requirement that the number of shares should be fixed. *Lexington R. R. Co.* v. *Chandler*, 13 Met. 312; 8 Gray, 596; *Worcester R. R. Co.* v. *Hinds*, 8 Cush. 110.

The minimum number of shares authorized by the charter of our company was one thousand; the maximum was six thousand. A subscription of one thousand shares would bind the subscribers. *Oldtown R. R. Co.* v. *Veazie*, 39 Maine, 571; 40 Maine, 172; *Penobscot R. R. Co.* v. *White*, 41 Maine, 512; *Lewey's Island R. R. Co.* v. *Bolton*, 48 Maine, 451.

But if this were necessary, the vote of May 12, 1868, accepting the subscription of the towns did fix the capital at $500,000, as much as the vote in the Massachusetts case " to close the books." 13 Met. 311.

The paper signed by Clarke is identical in its terms with that which was declared sufficient to hold the defendant in *K. & P. R. R. Co.* v. *Jarvis*, 34 Maine, 360.

There was obtained a *bona fide* subscription to the stock of more than $300,000. This is sufficiently proved by the records, which are unimpeached. *P. & K. R. R. Co.* v. *Dunn*, 39 Maine, 598; 40 Maine, 172; 41 Maine, 512.

If any verbal agreement to take sleepers was ever made it was waived by Clarke's unconditional subscription. *K. & P. R. R. Co.* v. *Waters*, 34 Maine, 369. The arrangement for Thompson, the contractor, to take $40,000 in stock, half of which was to be paid to the Maine Cent. R. R. Co., did not make his subscription conditional, the case of the *Troy & Greenfield R. R. Co.* v. *Newton*, 8 Gray, 596, to the contrary notwithstanding. In that case

the stock was delivered at less than par. The transaction with the Maine Central was between Thompson and that company, and nothing to us. We could take needed work instead of cash. *Chester Glass Co.* v. *Dewey,* 16 Mass. 94. So we could, and would, have taken defendant's sleepers, but they were never offered us. Therefore, we have a right now to demand a payment in money. Indeed, we always had this right, because the subscription on its face is unconditional.

*D. D. Stewart,* for the defendant.

The proceedings under which the plaintiffs claim to hold the defendant are based upon statute provisions exclusively. These provisions must be strictly complied with. *York & Cumberland R. R.* v. *Ritchie,* 40 Maine, 425.

An examination of the proceedings shows that these provisions as well as the conditions of the defendant's contract, have been totally disregarded.

The charter of the Somerset R. R. Co. provides that its capital stock " shall consist of not less than one thousand, nor more than six thousand shares." Special Laws of 1860, c. 465, § 2.

Before any assessment could be legally made it was indispensable that the number of shares should be determined by a vote of the stockholders, or by the directors. *Somerset & Kennebec R. R.* v. *Cushing,* 45 Maine, 524.

Without this the president and directors could not make an equal assessment on all the shares, as the charter required.

It is not a little curious that the learned counsel for the plaintiffs should have so totally forgotten his own able argument in *Som. & Ken. R. R.* v. *Cushing,* cited above, and the decision of our court which closely followed that argument and fully sustained it. It need only be referred to as a complete and perfect answer to his argument in the present case.

All the alleged assessments were made before the number of shares, fixed by the vote of the stockholders, was subscribed for. No assessment could be lawfully made till the whole number of

shares had been taken. *Stoneham Branch R. R. Co.* v. *Gould*, 2 Gray, 278; *Worcester & Nash. R. R. Co.* v. *Hinds*, 8 Cush. 110; *Atlantic Cotton Mills* v. *Abbott*, 9 Cush. 426; *Troy & Greenfield R. R. Co.* v. *Newton*, 8 Gray, 596.

The proposition of the defendant to fix the number of shares at 3,000, and the proposition of the several towns to fix it at 5,000, were deliberately rejected, and the clerk was directed to keep the books open until subscriptions to the amount of 6,000 shares had been received. This was exactly equivalent to a vote " to close the subscription books" when 6,000 should be subscribed.

The defendant's subscription was made subject to the condition that the plaintiffs should obtain $300,000 by *bona fide* subscriptions. The case falls directly within the principle laid down in *Troy & Greenfield R. R.* v. *Newton*,—that the subscriptions of the towns were " upon other terms, and the defendant is not bound to treat such subscriptions as legal subscriptions in making up the required number of shares."

The $300,000 required as the condition of the defendant's subscription could not be made up without counting the subscriptions of the towns. These required that $500,000 should be obtained. The subsequent subscriptions making up this amount are not *bona fide*.

By § 4 of the charter, the president and directors are authorized to make assessments. No such power is conferred upon the treasurer, yet they were made by him, as treasurer. It does not appear that the president and directors gave any instructions to him in the matter, and they could not, if they wished, delegate their power. *Stoughton* v. *Baker*, 4 Mass. 530; *Brewster* v. *Hobart*, 15 Pick. 307; *Female Orphan Asylum* v. *Johann*, 43 Maine, 185.

If one of several assessments, for which stock is sold, is invalid, the sale is void. *Lewey's Island R. R.* v. *Bolton*, 48 Maine, 454

Appleton, C. J. The defendant is an owner of shares in the plaintiff corporation. Assessments were made upon his shares. Neglecting to pay them, his shares were sold at auction, and this

suit is brought to recover the balance remaining due on the assessments, after deducting the proceeds of such sale.

The plaintiff to recover must prove legal assessments upon the shares of the defendant, and a legal sale before he can "be held accountable to the corporation for the balance, if his share or shares shall sell for less than the assessments due thereon," with interest and costs of sale.

It must be borne in mind that this suit is not based upon any contract made by the defendant, but upon his accountability as a stockholder, by virtue of the provisions of § 4 of the plaintiff's charter.

By § 2, the capital stock of the corporation shall consist of not less than one thousand, nor more than six thousand shares.

Before an assessment can be legally made, the number of shares or the amount of capital stock must be definitely fixed. This may be done in the charter. If so, there must be a subscription for the prescribed amount, before an assessment can be made. If not done by the legislature, the amount must be determined by the directors or stockholders. Until the number of shares forming the capital stock is fixed, there is no capital stock, and no assessments can be rightfully laid and legally collected. *Worcester & Nashua R. R. Co.* v. *Hinds*, 8 Cush. 110; *Stoneham Branch R. R. Co.* v. *Gould*, 2 Gray, 277. In *Somerset & Kennebec R. R. Co.* v. *Cushing*, 45 Maine, 530, it was held, that it was indispensable that the number of shares should be determined before an assessment could be made, and if the number was not fixed by the charter, that it was to be presumed that it should be by the directors or stockholders.

At a meeting of the stockholders, holden on the eighteenth day of April, 1868, it was voted : "That persons and corporations are hereby authorized and invited to become subscribers to the capital stock of the Somerset Railroad Company, and the clerk is hereby authorized to receive subscriptions to the capital stock until the amount subscribed shall be equal to six thousand shares."

At this date it would seem, by the report of the committee, that

subscriptions to the amount of $316,500 had been obtained, and it was then voted, " that all persons and corporations who have subscribed to the capital stock of the Somerset Railroad Company, be admitted as associate members."

By the seventh article of the by-laws then adopted, the directors were authorized " to dispose of the *residue* of the capital stock authorized by the charter and not subscribed for at the time of organization, in such manner and at such times, and from time to time, as they shall judge most for the interest of the company."

At a meeting of the directors, held May 15, 1868, it was voted : " That the president have authority to take all necessary measures to procure subscription to the capital stock not subscribed for at the organization."

These votes are all that have any relation to fixing the capital stock of the corporation. From a fair construction they would seem to establish the capital stock at six thousand shares. If so, then the assessments are void, because there has been no subscription for that amount of stock. If not so, then they are void because the amount of the capital stock has never been fixed, but has been left fluctuating and undetermined.

As a compliance with the prerequisites of the charter and by-laws is a condition precedent to the liability of the defendant, if the assessments of shares were not in accordance with law, this suit is not maintainable.

There are various other objections made to the regularity of the proceedings of the plaintiff corporation, but it is not necessary to consider them. *Plaintiff nonsuit.*

KENT, WALTON, BARROWS, and VIRGIN, JJ., concurred.