NEW YORK, HOUSATONIC AND NORTHERN RAILROAD COMPANY
vs. FLOYD K. HUNT.

The statute (tit. 1, ch. 7, § 106) which provides that in all actions upon any written instrument claimed to have been executed or entered into by the defendant, and which is described or recited in the declaration, the plaintiff shall not be required to prove the execution or delivery of such instrument, unless the defendant at the time of pleading shall file notice in writing that he denies

such execution or delivery, was not intended to dispense with the production in evidence of the writing declared on.

The charter of a railroad company provided that no instalments of subscriptions to its capital stock, after the first, should be called for until at least $500,000 of the capital stock should be subscribed. After such subscriptions to the amount of $200,000 had been made, a contractor agreed with the company to construct its road, and to accept in part payment, on the completion of the road, $300,000 in its capital stock. The contractor afterward became insolvent, and failed to fulfil his contract.

Held, that such agreement was not a subscription to stock within the meaning of the proviso in the charter.

Assumpsit upon the following instrument:

"New York, Housatonic and Northern Railroad Company.

"We, the undersigned, hereby agree to take the number of shares set opposite our respective names of the capital stock of the above named company, and to pay for the same in such instalments and at such times as a majority of the board of directors of said company shall direct. The said capital stock being one million of dollars, divided into ten thousand shares of one hundred dollars each.

(Signed)    Floyd K. Hunt.                         5 shares."

The action was brought to the Superior Court, and tried on the general issue, with notice, closed to the court, (*Minor, J.,*) where the following facts were found, and the questions of law arising on the record were reserved for advice.

The defendant not having in his notice denied the execution or delivery of the instrument declared on, the plaintiffs offered no evidence to prove its execution and delivery by the defendant. The plaintiffs proved that the original contract was lost, but they did not offer in evidence a copy, nor attempt to prove the language or substance of it.

The plaintiffs were incorporated under the general railroad law of the state of New York, with a capital stock of one million dollars, in shares of one hundred dollars each, and their articles of association contained the following provision:

"The board of directors may require payment of the re-

maining ninety dollars on each of the shares already subscribed, and also of the whole or any portion or portions of any additional shares hereafter to be subscribed, at such times respectively as a majority of the board of directors shall prescribe. Provided, however, that no instalment shall be payable upon a less notice than ten days; and that no part of said ninety dollars shall be called for until at least five hundred thousand dollars of said capital stock shall be subscribed."

On the fourth day of October, 1865, the plaintiffs entered into a written contract with Sidney G. Miller, a contractor, by which Miller agreed to construct a portion of the plaintiffs' road, and to receive in part payment capital stock of the plaintiffs to the amount of $300,000. The plaintiffs offered this contract in evidence, for the purpose of proving that Miller was a subscriber to the stock of the company to the amount of three hundred thousand dollars. At the date of the contract with Miller stock had been subscribed for to the amount of two hundred thousand dollars, which was the amount required by the laws of New York with reference to the length of the road in that state, and was in addition to the amount of stock named in the contract as agreed to be taken by Miller. The contract with Miller was made in good faith by the company and by Miller, and his agreement therein to take the stock named as he should earn it was intended by the parties, and was regarded by them, as a *bonâ fide* agreement by Miller that he should take such stock when earned by him. Miller at the time the contract was made was reputed to be a responsible person, and his pecuniary credit good, and his contract was reasonably believed by the company to be one which could and would be completely and faithfully executed on both sides as agreed, and would be advantageous to the company. Miller from the date of the contract until sometime late in the fall of 1866 continued to be in excellent pecuniary credit and standing, when he became embarrassed through the failure of Ketchum & Co., of New York city. Soon after the execution of this contract, to wit, on or before December, 1865, Miller commenced the construction of the road under the contract, and faithfully carried on the construction pursuant to

its terms until the fall of 1866, when he took in one Adna Gough as a partner, and afterward assigned to Gough all his rights in the contract, which assignment was never assented to by the company. Gough carried on the work of construction under the contract until March, 1867, when he became entirely insolvent and disappeared, since which time the company have themselves · carried on the work of construction, having been compelled so to do by the insolvency and failure to perform of the contractors, but without discharging or releasing them from their obligations; and the portion of the road between Brookfield and Danbury has been completed and running for over two years last past, and other portions of the road in this state and the state of New York have been and are still being worked. While Miller and Gough were constructing the road under the contract, the company issued to them the stock which they had earned and were to take under it for their work, amounting to about twelve thousand dollars in all. The amount which was issued to Miller individually was about six thousand dollars.

Nine instalments of ten dollars each on each share had been called for by the company by the vote of its directors, besides the ten per cent. paid at the time of the subscription of the stockholders, and which the defendant had paid.

The amounts of instalments and the date of the calls were as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| 1st call | was made | November 14, 1865, | and payable | December 20, 1865, | $50 |
| 2d | " | March 13, 1863, | " | April 1, 1866, | 50 |
| 3d | " | May 8, 1866, | " | May 23, 1866, | 50 |
| 4th | " | May 8, 1866, | " | June 1, 1866, | 50 |
| 5th | " | June 12, 1866, | " | June 25, 1866, | 50 |
| 6th | " | Sept. 15, 1866, | " | Sept. 28, 1866, | 50 |
| 7th | " | Sept. 15, 1866, | " | Oct. 15, 1866, | 50 |
| 8th | " | Dec. 1, 1866, | " | Dec. 13, 1866, | 50 |
| 9th | " | Feb. 19, 1867, | " | March 9, 1867, | 50 |

$450

Notices of these calls were regularly forwarded to the defendant as they were voted.

The defendant on the 27th of June, 1866, in response to calls then previously made, sent to the company his check for

two hundred and fifty dollars, to pay the amounts then due on the first five instalments, which check was subsequently paid by the defendant. None of the other instalments called for have been paid by the defendant.

*Blake*, with whom were *Treat* and *Bullock*, for the plaintiffs.

The points set up in defence are (1.) That the plaintiffs did not prove the execution of the contract declared on. (2.) That the $500,000, which by the articles of association was to be subscribed before instalments could be called for, has never been subscribed.

I. The statute (p. 23, sec. 106) provides that neither the execution nor delivery of a written instrument " which is described or recited in the declaration" need be proved, "unless the defendant at the time of pleading shall file notice in writing that he denies such execution or delivery." The expression " described or recited" clearly shows that the *form* of the contract is to be regarded as admitted, as well as its " execution or delivery." Indeed even without this expression the statute would have the same effect, or be an absurdity.

II. In view of all the facts found by the court, the written agreement to take stock by the contractors was a legal and valid stock subscription.

1. It was certainly binding both on the contractors and on the company, in precisely the same manner and to the same effect as a stock subscription. In what respect then is it distinguishable from such subscription ? *Danbury & Norwalk R. R. Co.* v. *Wilson*, 22 Conn., 451.

2. The fact that the stock subscribed for by the contractors was to be paid for in work and materials, does not make the agreement any less a stock subscription. Angell & Ames on Corp., 505, (*note c*) ; *Boody* v. *Rutland & Burlington R. R. Co.*, 24 Vt., 660 ; 1 Redf. on Railways, 439, sec. 121.

3. The fact that the contractors a year afterward became insolvent through the failure of other parties, does not render their subscription, which was made when they were in excellent credit, any less a stock subscription. Neither can such insolvency relate back so as to invalidate the defendant's sub-

scription the year previous. Angell & Ames on Corp., secs. 529, 543, (note a); *Danbury & Norwalk R. R. Co.* v. *Wilson*, 22 Conn., 435.

4. The contractors' subscription, if good when made, was a subscription for the whole amount, and not merely for such amount as they in fact subsequently took and paid for. Angell & Ames on Corp., 526, (note 3); *Hartford & New Haven R. R. Co.* v. *Kennedy*, 12 Conn., 508.

5. The defendant does not pretend ignorance of this subscription by the contractors when he made his own subscription, nor when he paid the first five instalments. Having permitted the company, therefore, to assume responsibilities without objection, he is now estopped from evading his liability. Angell & Ames on Corp., 232, 233, 511, 513; *Farmington Academy* v. *Allen*, 14 Mass., 175; *Holmes* v. *Dana*, 12 id., 190; *Danbury & Norwalk R. R. Co.* v. *Wilson*, supra.

*Todd*, with whom was *White*, for the defendant.

Seymour, J. The plaintiff in this case seeks to recover from the defendant the amount of his subscription to the capital stock of the company. The action is assumpsit upon a written instrument averred to have been executed by the defendant, and described in the declaration. The defendant did not file a notice denying the execution of the instrument. The plaintiff therefore was not bound on the trial to prove its execution and delivery, by virtue of § 106 of the Act de Civil Actions.

The plaintiff claimed that under this Act he was not bound to *produce* the instrument, but might regard it as proved as described in his declaration, and proceed at once to show its breach. In this we think the plaintiff is wrong. The statute was intended to dispense with the formal proof of execution, but not to dispense with the production of the writing declared on. The defendant's subscription should have been produced, or if lost, its contents proved. After the decision of this court in the case of *Mahaiwe Bank* v. *Douglass*, 31 Conn., 170, this question is hardly an open one, and requires no discussion.

The principal matter in issue between the parties is whether the condition in the eighth article of the plaintiff's charter has been complied with, which provides that no instalment, except the first, shall be called for until at least $500,000 of the capital stock shall be subscribed.

It is agreed that this sum had not been subscribed in the usual way of direct subscription. About $200,000 was thus subscribed, and one Miller contracted to build the road, and take part pay in stock to the amount of $300,000, and the plaintiff contends that this contract of Miller amounts to a subscription within the intendment of the article of the charter on that subject. The substance of Miller's contract is that he will build the entire road of forty miles within two years from the date of the contract, and he is to have when the contract is completed, among other things, $300,000 in the stock of the company. He failed to fulfil the contract, and became insolvent.

We are clear that this agreement by Miller is no subscription to stock within the fair meaning of the proviso. That proviso contemplated subscriptions payable in money, by instalments to be regularly called in by the directors. The defendant had a right to expect and require that subscriptions like his own to the amount of $500,000 should be made, before he should be liable for further instalments after the first. The construction put upon this proviso by the plaintiff might lead, we think, to great abuses. It is important to the public, as well as to individual stockholders, that subscriptions should be *bonâ fide*, and that the means for building the road should be secured before the enterprise is entered upon.

It seems that the defendant submitted without objection to calls for the first five instalments, and the plaintiff claims that thereby the defendant waived compliance with the strict letter of the proviso, and that it is now too late for him to complain of the non-fulfillment of the condition. Such payments may furnish evidence of waiver, but the finding states the mere fact of the payment, and does not detail the circumstances under which it was made. The finding in this and in some other respects seems imperfect; and in view of the

whole record, we think the case should be remanded to the Superior Court for a new trial, and that the parties have liberty to show the facts connected with the payment of the instalments, with the view of presenting more fully all that bears upon the question of waiver.

Some questions were presented relating to variances between the declaration and the proof. It is clear that the plaintiff must amend his declaration, so that the defendant's subscription shall appear to be, as it was, conditional on the $500,000 being subscribed, and as to the other supposed variances, they can easily be avoided in the amended declaration. The points relating to these variances are not of general importance, and require no decision or discussion here.

In this opinion the other judges concurred.