Burke *v.* Mead.

---

## BURKE ET AL. *v.* MEAD ET AL.

[No. 19,540.    Filed October 9, 1902.]

STATUTE OF FRAUDS.—*Contract Signed by One Party.*—The signatures of the owners of real estate to a proper memorandum of a contract of sale is sufficient to take the contract out of the statute of frauds as to them, although the contract is not signed by the other parties thereto. *pp. 255, 256.*

CONTRACT.—*To Convey Realty.—Mutuality of Parties.*—A written contract to sell real estate, resting upon a sufficient consideration, signed by the owner and accepted by the purchaser, is not invalid for want of mutuality. *p. 256.*

SPECIFIC PERFORMANCE.—*Enforceable Contract.*—Courts of equity require as a prerequisite to a decree of specific performance, that, after summoning all evidence with which it is admissible to support the contract, its provisions shall be clear and specific in all of their essential elements. *p. 256.*

SAME.—*Contract.—Uncertainty.*—Since the *status* of both parties in a suit for specific performance is to be changed if a decree goes in favor of plaintiff, uncertainty in reference to plaintiff's duty is quite as fatal an objection to the granting of equitable relief as uncertainty in reference to defendant's obligations. *pp. 257.*

CONTRACTS.—*Uncertainty.—What is Implied.*—The law is a component part of every contract that contains provisions which are open to legal interpretation; therefore terms which the law implies need not be expressed. *pp. 257, 258.*

SAME.—*Consideration.—Uncertainty.—Parol Evidence.—Statute of Frauds.* —Where a contract for the sale of real estate states the consideration indefinitely parol evidence is admissible to explain the ambiguity. *p. 258.*

Burke *v.* Mead.

Specific Performance.—*Complaint.*—*Default.*—In a suit for specific performance, a complaint is not good on demurrer which does not allege facts that would be sufficient upon default to enable the court to draft its decree from such averments.  *p. 259.*

Same.—*Indefinite Contract.*— *Complaint.* — Where by the terms of a contract it was provided that the purchaser of real estate should pay to the owner a certain part of the consideration in cash, and the remainder in stock in a corporation to be organized, a complaint for the specific performance of the contract which does not allege the kind of business to be conducted by the corporation, and where the business was to be conducted, is insufficient on demurrer.  *pp. 259, 260.*

Same.—*Complaint.* — Where a contract for the sale of real estate authorized a report from the purchaser, within five days, of his inability to accept the offer, a general averment in a complaint for specific performance, of performance of conditions by plaintiff is insufficient.  *p. 259.*

Corporations.— *Powers too Broad.*—*De Jure Corporation.*—Where the powers of a corporation as set out in its articles are broader than authorized by the statute under which the corporation is organized the organization does not become a *de jure* corporation.  *pp. 259, 260.*

Same.—*Incidental Powers.*—The manufacture and sale of "all kinds of electrical appliances, apparatus and supplies" is not an incidental power of a corporation organized for the purpose of "manufacturing, storing, selling, and distributing electricity for light, heat, and power," etc.  *pp. 260, 261.*

Specific Performance.—*Contract.*—*Uncertainty.*—*Complaint.*—Where by the terms of a contract to convey land, by the terms of which a part of the consideration was to be paid in stock in a corporation to be organized, the nature of which corporation not being set out in the contract, an allegation in a complaint for specific performance, that, "after repeated conferences with plaintiffs, defendants, with full knowledge of all the facts, and in contemplation thereof and the proposed corporation, signed and delivered the contract," is not a sufficient allegation as to the character of the corporation agreed upon.  *pp. 262, 263.*

Same.—*Complaint.*—*Demand.*—*Waiver.*—In a suit for the specific performance of an indefinite contract, the plaintiff is not relieved from pleading extraneous facts necessary to support the contract on the ground that defendant by making specific objections at the time of plaintiff's tender of performance waived all others.  *p. 263.*

Same.—*Contract to Take Corporation Stock.*—*Complaint.*—Where the subscription of the whole capital stock of a corporation is a condition precedent to the enforcement of an executory contract to take stock, a complaint for the specific performance of such execu-

tory contract which shows on its face that all the capital stock was not subscribed, and contains no offer so to do is insufficient.  *p, 263.*

SPECIFIC PERFORMANCE.—*Complaint.*—*De Jure Corporation.*—Where, in a suit for the specific performance of a contract to take stock in a corporation to be organized, a complaint alleging facts showing that the corporation would not, if so organized, be a *de jure* corporation, is insufficient on demurrer, although it contains the specific allegation that the incorporation was in all respects under and pursuant to the laws of Indiana.  *pp. 265, 266.*

Appeal from Wabash Circuit Court; *H. B. Shively,* Judge.

Suit by Benjamin F. Burke and others against Merritt C. Mead and others. From a judgment for defendants, plaintiffs appeal. Transferred from Appellate Court, under §1337u Burns 1901. *Affirmed.*

*G. A. Henry, P. H. Elliott, M. E. Forkner* and *A. H. Plummer,* for appellants.

*W. H. Carroll, G. D. Dean* and *S. W. Cantwell,* for appellees.

GILLETT, J.—The appellants filed their complaint in five paragraphs to obtain a decree for the specific performance of a contract by appellees. The latter successfully demurred to each paragraph of the complaint. A decree followed, that appellants take nothing by their suit, and the latter assign errors, based on said rulings on demurrer. Each paragraph of the complaint sets out, either in the body of the paragraph or as an exhibit thereto, a writing that it is alleged that appellees executed to appellants. The following is a copy of said writing: "Marion, Indiana, May 13, 1899. This agreement, made and entered into this 13th day of May, 1899, by and between M. C. Mead & Co., of Marion, Indiana, party of the first part, and Benjamin F. Burke and Wm. H. Anderson, party of the second part, witnesseth: That the party of the first part for and in consideration of the sum of $25,000 to them agreed hereby to be paid by the party of the second part, the receipt

Burke *v.* Mead.

of $5 of which is hereby acknowledged, and the delivery by the said second party to the said first party within sixty days from this date the further amount of $23,500 in paid-up capital stock of a corporation to be by said second party organized and incorporated, capital stock $120,000, to be known as the Marion Electric Company, the said first party hereby agrees to sell, transfer, convey, and deliver with good and perfect title, free from liens and encumbrances, to said second party, the electric lighting and power plant now owned by said first party, located at Marion, Ind., with all the engines, boilers, machinery, poles, lines, cables, appliances and apparatus thereto belonging, together with all rights of way, gas rights, etc., and including the following described real estate, with the buildings and fixtures erected thereon, to wit: All that part of lot number twenty in White's second addition to the town, now city, of Marion, which lies east of Boots creek; also south half of lot number nineteen in White's second addition to the town, now city, of Marion, Grant county, Indiana. Said deed of conveyance to be executed by said first party within five days from this date, and placed in escrow with the Marion Bank, in Marion, Indiana, to be delivered by said bank to said second party upon their payment and delivery to said bank, for said first party within sixty days from this date, the stock above mentioned; and said second party upon their part agree to make said payment of cash within ten days, and said delivery to said bank within the time above mentioned, both cash and stock, or report to first parties within five days their inability to accept first parties' offer. In witness whereof the parties hereto have set their hands this day and date above written. [Signed] M. C. Mead & Co."

It is unnecessary to set out the several paragraphs of complaint. Some particulars of each of said paragraphs will, however, be stated hereafter. We deem it best to consider first, in a general way, some propositions that relate to most, if not all, of said paragraphs.

It was not necessary that the appellants should have signed the contract. The signatures of appellees to a sufficient note or memorandum would take it out of the statute of frauds as to them. §6629 Burns 1901; *Newby* v. *Rogers,* 40 Ind. 9. The requirement of mutuality in a contract does not mean that there must be a mutuality of remedy. *Grove* v. *Hodges,* 55 Pa. St. 504, 516. A proposition in writing to sell real estate upon certain terms that is signed by the owner, and is not a mere offer, but rests upon a distinct consideration, may become binding upon a seasonable acceptance. Clark, Cont., 22, and see *Cherry* v. *Smith,* 3 Humph. 19, 39 Am. Dec. 150; *Souffrain* v. *McDonald,* 27 Ind. 269; *Street* v. *Chapman,* 29 Ind. 142; *Fairbanks* v. *Meyers,* 98 Ind. 92; *Indianapolis Nat. Gas Co.* v. *Kibbey,* 135 Ind. 357. It follows, therefore, that the contract that is here sought to be enforced does not stand condemned as lacking in mutuality.

We shall not, at this point, discuss the extent that it is permissible to reënforce a written contract by parol evidence. Courts of equity do, however, strenuously require, as a prerequisite to a decree of specific performance, that, after summoning all evidence with which it is admissible to support the contract, its provisions shall be clear and specific in all of their essential elements. Mr. Justice Story, in his work on Equity Jurisp. (13th ed.), at §764, after stating that in former times able judges felt themselves at liberty to frame a contract for the parties, *ex aequo et bono,* where it found none, says: "Such a latitude of jurisdiction seems unwarrantable upon any sound principle, and accordingly it has been expressly renounced in more recent times." The following authorities fully support the later doctrine: *Gas Light, etc., Co.* v. *City of New Albany,* 139 Ind. 660; *Louisville, etc., R. Co.* v. *Bodenschatz, etc., Co.,* 141 Ind. 251; *Robbins* v. *McKnight,* 5 N. J. Eq. 642, 45 Am. Dec. 406; *Stanton* v. *Miller,* 58 N. Y. 192; *Atwood* v. *Cobb,* 16 Pick. 227, and many cases cited in note to this

case as reported in 26 Am. Dec. 657; *Hamilton* v. *Harvey,* 121 Ill. 469, 13 N. E. 210, 2 Am. St. 118; *Blanchard* v. *Detroit, etc., R. Co.,* 31 Mich. 43, 18 Am. Rep. 142; *Iron Age Pub. Co.* v. *Western Union Tel. Co.,* 83 Ala. 498, 3 South. 449, 3 Am. St. 758; *Minnesota Tribune Co.* v. *Associated Press,* 27 C. C. A. 542, 84 Fed. 921; *Russell* v. *Agar,* 121 Cal. 396, 53 Pac. 926, 66 Am. St. 35; *Whitehill* v. *Lowe,* 10 Utah 419, 37 Pac. 589. The reason for the requirement of certainty is thus pointed out by a well known writer on specific performance: "To sustain the latter proceeding [an action for damages], the proposition required is the negative one, that the defendant has not performed the contract—a conclusion which may be often arrived at without any exact consideration of the terms of the contract; whilst in proceedings for specific performance it must appear not only that the contract has not been performed, but what is the contract which is to be performed." Fry, Spec. Perf. (3d Am. ed.), §361.

As the *status* of both parties is to be changed if a decree goes in favor of the plaintiff, it is evident that uncertainty in the contract as to the plaintiff's duty is quite as fatal an objection to the granting of equitable relief as uncertainty as to the defendant's obligation. *Louisville, etc., R. Co.* v. *Bodenschatz, etc., Co.,* 141 Ind. 251, 265; *Agard* v. *Valencia,* 39 Cal. 292. This view finds at least implied expression in the following language of Mr. Justice Washington, used in the opinion of the court in *Colson* v. *Thompson,* 2 Wheat. 336, 340, 4 L. Ed. 253: "The contract which is sought to be specifically executed, ought not only to be proved, but the terms of it should be so precise as that neither party could reasonably misunderstand them. If the contract be vague or uncertain, or the evidence to establish it be insufficient, a court of equity will not exercise its extraordinary jurisdiction to enforce it, but will leave the party to his legal remedy."

It is to be recollected, however, with reference to the elements of certainty generally, that terms which the law implies need not be expressed, because the law is a component part of every contract that contains provisions that are open to legal interpretation. *Foulks* v. *Falls,* 91 Ind. 315; *Long* v. *Straus,* 107 Ind. 94, 57 Am. Rep. 87; *Friebert* v. *Burgess,* 11 Md. 452; *Cooper* v. *Hood,* 26 Beav. 293; *Hudson Canal Co.* v. *Pennsylvania Coal Co.,* 8 Wall. 276, 288, 19 L. Ed. 349.

Appellees' counsel insist that certain averments of the several paragraphs of complaint relative to the contract are not to be considered, because of the effect of the statute of frauds where contracts lie in parol. We find ourselves unable to agree entirely with them. The old time controversy as to whether the note or memorandum must show the consideration on which the defendant's promise was founded was set at rest in this State in 1853 by the following provision that was enacted as a part of the statute of frauds: "The consideration of any such promise, contract or agreement need not be set forth in such writing, but may be proved." §6630 Burns 1901. See *Hiatt* v. *Hiatt,* 28 Ind. 53. In the contract under consideration it is plainly stated what appellees were required to do, and, if the writing had not attempted to state the consideration for their promise, it is clear that under our statute it would have been competent to allege and prove the consideration. The writing does, however, undertake to state the consideration, but, as we shall hereafter show, states it indefinitely, and we think that it is competent to relieve the ambiguity to the extent that it is competent to explain other ambiguous writings not relating to transactions within the statute of frauds. Even statements that are of a contractual character, not made as mere recitals, are subject to explanation to the extent of identifying the subject-matter which is described in the contract in language too general to admit of specific application. *Kieth* v. *Kerr,* 17 Ind. 284; *Mace* v. *Jackson,*

38 Ind. 162; *Heath* v. *West,* 68 Ind. 548; *Martindale* v. *Parsons,* 98 Ind. 174; Jones, Law of Ev., §445; Parsons, Cont. (5th ed.), 562, 563, 564.

The first paragraph of the complaint counts upon the written contract, and does not allege any extraneous matters, except that it contains a general allegation of performance upon the part of appellants. We think that this paragraph is insufficient. It ought to have alleged facts that would have been sufficient upon a default to have enabled the court to draft its decree from the averments. It can not be determined from the written contract alone what kind of a business the corporation was to be organized to conduct, or where such business was to be conducted. These were material matters. *Dorris* v. *Sweeney,* 60 N. Y. 463; *Marysville, etc., Co.* v. *Johnson,* 109 Cal. 192, 41 Pac. 1016, 50 Am. St. 34. A general averment of performance of a condition precedent is sufficient under the code. §373 Burns 1901. But such averment will not suffice to avoid ambiguities in the contract. The appellants may have fully performed the letter of their contract, but the court, sitting as a court of equity, should have been advised as to what kind of a business engagement or speculation it was called on to require appellees to engage in. As the writing authorized the appellants, in lieu of a deposit of the stock and a payment of the money, to "report to first parties, within five days, their inability to accept first parties' offer," we think, in view of the omission of any allegation that appellants did accept the proposition, that it may be inferred that their alleged performance related to the latter alternative. See *Street* v. *Chapman,* 29 Ind. 142, 152. For this further reason, we think that the first paragraph of complaint was insufficient.

The second paragraph of complaint, in addition to the general allegation of performance, alleges specifically what appellants did under the contract. One of the allegations upon this subject is that "said Marion Electric Company

was duly incorporated on the 16th day of May, 1899, with a capital stock of $120,000, for the purpose, as set out in its articles of association, of manufacturing, storing, selling, delivering, and distributing electricity for light, heat, power, and for all such other chemical and mechanical purposes as electricity can be applied to, and for the purpose of manufacturing and selling all kinds of electric appliances, apparatus, and supplies." This paragraph is also lacking in the averment of any extrinsic facts as to what kind of a corporation was to be organized according to the contract of the parties. The appellants have simply determined for themselves what kind of a corporation they would organize, and they ask the court to compel appellees to purchase of them a block of paid-up stock in such corporation. This is not a case where stock has already been taken, and the action is to compel the subscriber to pay for it, for the contract in this case was merely executory, and the corporation was not organized at the time the contract was entered into. Mr. Morawetz, in his work on Private Corporations (2d ed.), at §52, says: "An offer or contract to become a shareholder in a corporation, or to subscribe for shares thereafter, does not become binding or create a liability until all conditions precedent, upon which the offer or contract was made, have been performed." It is our opinion also that the paragraph of complaint under consideration shows on its face that the Marion Electric Company is not a *de jure* corporation. Appellees were not required to take stock in a corporation whose only existence was of a *de facto* character. *Williams* v. *Citizens Enterprise Co.*, 153 Ind. 496.

We think that the generating of electricity is manufacturing within our manufacturing and mining companies act (§5051 *et seq.* Burns 1901; 10 Am. & Eng. Ency. Law (2d. ed.), 862), but we do not think that the manufacture and sale of "all kinds of electric appliances, apparatus, and supplies" is a business incident thereto. See

*Franklin Nat. Bank* v. *Whitehead,* 149 Ind. 560, 39 L. R. A. 725, 63 Am. St. 302; *Williams* v. *Citizens Enterprise Co.,* 25 Ind. App. 351. In *People, ex rel.,* v. *Chicago Gas Trust Co.,* 130 Ill. 268, 283, 22 N. E. 798, 8 L. R. A. 497, 17 Am. St. 319, it was said: "An incidental power is one that is directly and immediately appropriate to the execution of the specific power granted, and not one that has a slight or remote relation to it," citing *Hood* v. *New York, etc., R. Co.,* 22 Conn. 1, and *Franklin Co.* v. *Lewiston, etc., Inst.,* 68 Me. 43, 28 Am. Rep. 9. In *Nicollet Nat. Bank* v. *Frisk-Turner Co.,* 71 Minn. 413, 74 N. W. 160, 70 Am. St. 334, it was held that the purchase of ready-made clothing was not an incident to the business of manufacturing such clothing. "The exercise of a power that might be beneficial to the principal business is not necessarily incident to it." *Nicollet Nat. Bank* v. *Frisk-Turner Co., supra; State, ex rel.,* v. *Minnesota, etc., Co.,* 40 Minn. 213, 222, 41 N. W. 1020, 3 L. R. A. 510. According to averment, said corporation not only proposes to engage in the business of "manufacturing, storing, selling, delivering, and distributing electricity for light, heat, and power," etc., but it has also organized to engage in the multiform activities involved in the manufacture and sale of all kinds of electrical appliances, apparatus, and supplies. Without attempting to lay down any exact rule as to what is an incident of a principal power, we hold that the paragraph of complaint under consideration was properly held insufficient, because it discloses a purpose to engage in lines of employment and business more diverse than the statute authorizes. The proposition proposed only illustrates how ambiguous the written contract is that forms the basis of this suit. It can not be determined from such contract what the parties contemplated should be the scope of the corporate endeavor.

The following language of the New York Court of Appeals in *Dorris* v. *Sweeney,* 60 N. Y. 463, 468, seems quite

apposite here: "A legal and effectual formation of a corporation or joint stock company for the purpose specified in the contract was a condition precedent to his obligation to put in his capital. He would not be bound under such a contract to invest his capital in the stock of a corporation not legally formed, or which had not obtained the franchise of carrying on the business contemplated by the contract, and in which he had agreed to become interested.   *   *   * The insuperable difficulty in the way of sustaining this action is, that the only business in which the defendant agreed to embark was that of preserving fruits by the method described in Nyce's patent. He did not agree to invest capital in any other business. The corporation actually formed included, in addition to that of thus preserving fruits, those of manufacturing preserved fruits, and of canning fruits. He had never agreed to engage in those branches of business, and yet if he were compelled to pay in his money and take stock in the corporation actually formed, the capital might have been employed in manufacturing preserves and canning fruits, even to the exclusion of the patented process, which was the sole subject of the contract he had made." The second paragraph of the complaint was clearly insufficient.

Appellants' third paragraph of complaint proceeds on the theory that the contract was partly oral and partly written. After setting out a great many evidentiary facts as to the character of the business that appellees were engaged in, and that appellants had procured from the city of Marion a franchise, the exercise of which would bring them into competition with appellants, and that there were overtures and negotiations between the parties looking to a consolidation of their interests, the paragraph alleges "that, after repeated conferences and negotiations, the defendants, with a full knowledge of all of the facts aforesaid, and in contemplation thereof and the proposed organization of said company, signed, executed, and delivered to these

plaintiffs" the writing hereinbefore set out. The evidentiary matters stated might lead a court to conclude therefrom, as a matter of evidence, that the character of the corporation was agreed on, but we think that the pleading is lacking in any definitive allegation as to what the oral agreement was. The allegation of performance does not aid this paragraph, because it affirmatively appears that there was only a tender of performance, and the statute does not authorize a general allegation of a mere tender of performance. *Newby* v. *Rogers,* 40 Ind. 9.

The fourth paragraph of complaint counts upon the written contract unaided by any extrinsic averment, but it seeks to avoid other objections that the appellees might have to the contract by alleging that, upon a tender of performance, appellees made only one objection, and that that related to the control and management of the company. The proposition urged in support of this paragraph,—that by the making of a particular objection all others were waived,— is not controlling. We do not regard as applicable the general rule declared in *Bartlett* v. *Adams,* 43 Ind. 447, 449, "that if, when a demand is made, a specific objection is made as a reason for not complying with the demand, all others, which if made might be readily obviated, are waived." The objection lies deeper than a mere question of performance, because it is a question as to what was the contract. Without the aid of parol evidence, the written instrument was hopelessly uncertain and did not bind appellees specifically to perform it. This paragraph of complaint is also insufficient because it shows on its face that all of the capital stock was not subscribed, and there was not even an offer so to do. *Nemaha Coal, etc., Co.* v. *Settle,* 54 Kan. 424, 38 Pac. 483; *Baker* v. *Ft. Worth Board of Trade,* 8 Tex. Civ. App. 560, 28 S. W. 403; *Rockland, etc., Co.* v. *Sewall,* 78 Me. 167, 3 Atl. 181; *Stearns* v. *Sopris,* 4 Col. App. 191, 35 Pac. 281; *Norwich Lock Mfg. Co.* v. *Hockaday,* 89 Va. 557, 16 S.

E. 877; *International, etc., Assn.* v. *Walker,* 88 Mich. 62, 49 N. W. 1086.

In the last case cited it is said, at page 76: "A corporation without subscribed capital would be a mere bubble, without responsibility, and liable to do great mischief in the mercantile world, putting forth false bases of credit, and preying upon the community by reason of such deception. The rights of every subscriber to the stock depend upon the full amount being subscribed. These enterprises are entered into for the purpose of gain and profit. It is essential to the member that his rights and liabilities as a member should be fixed when he enters into the engagement by his subscription. The capital which is named in the articles of association and the shares specified are known to him when he subscribes, and by this he knows that his subscription comprises an aliquot part of the entire capital of the corporation; that when calls are made they are based upon the whole capital authorized; and that he can not be called upon to pay more than his share for the purpose required, which would be the case if calls could be made before the whole amount of the capital is subscribed. Such capital is usually fixed at such a sum as the subscribers consider necessary, or that will be required to secure the object for which the corporation is formed; and it might, and probably would, be disastrous to the enterprise to embark in the undertaking before the whole capital was secured by actual subscriptions. *Railroad Co.* v. *Johnson,* 30 N. H. 390, 407; *Railroad Co.* v. *Barker,* 32 N. H. 363; *Manufacturing Co.* v. *Parker,* 14 N. H. 543; *Insurance Co.* v. *Hart,* 31 Md. 60; *Hughes* v. *Manufacturing Co.,* 34 Md. 332; *Railroad Co.* v. *Cushing,* 45 Me. 524; *Railroad Co.* v. *Clarke,* 61 Me. 384; *Railroad Co.* v. *Preston,* 35 Iowa 118; *Livesey* v. *Hotel Co.,* 5 Neb. 50; *Bridge Co.* v. *Cummings,* 3 Kan. 69; *Railroad Co.* v. *Hunt,* 39 Conn. 75; *Wontner* v. *Shairp,* 4 C. B. 404; *Navigation Co.* v. *Theobald,* 1 Moo. & Mal. 151; *Fox* v. *Clifton,* 6 Bing. 776;

*Railway Co.* v. *Dalbiac,* 6 Eng. Rul. Cas. 753; *Railway Co.* v. *Veazie,* 39 Me. 571; *Fray* v. *Railroad Co.,* 2 Metc. (Ky.) 323; *Railroad Co.* v. *Gould,* 2 Gray 277."

The cases of *Newcastle, etc., Co.* v. *Bell,* 8 Blackf. 584, *Eakright* v. *Logansport, etc., R. Co.,* 13 Ind. 404, *Brownlee* v. *Ohio, etc., R. Co.,* 18 Ind. 68, *Hoagland* v. *Cincinnati, etc., R. Co.,* 18 Ind. 452, and *Fox* v. *Allensville, etc., Co.,* 46 Ind. 31, are based upon the provisions of materially different statutes, or are cases where the subscription was made to the capital stock of a corporation already organized. In this case no question is involved as to the rights of the corporation or of its creditors, for the action is by the owners of certain shares of stock to compel other persons to take the same by reason of a contract.

Under the authorities we have cited, a subscription to the whole capital stock is a condition precedent to the enforcement of a merely executory agreement to take stock. Even if, by failure to object to the manner of performance, the appellees can not object to a decree going, and even if the capital stock might be subscribed after incorporation and before the corporation undertakes to do business,—a point that we do not decide,—yet appellees, even under the rules of equity practice, were entitled to a performance of the contract in the particulars named before the entry of the decree, and it was, therefore, necessary that there should have been an offer to perform in the complaint.

The fifth paragraph of complaint sets out the written contract, and alleges the extrinsic matters contained in some of the other paragraphs. Although it discloses that but $110,000 of the capital stock was subscribed, yet it contains an offer to subscribe and pay for the balance. It also shows that the appellees, having notice of the manner of performance, refused to perform, on the ground that appellants would not agree that appellees should have the management and control of the corporation. It is, however, alleged that appellants determined to organize an "electric company for

the purpose of manufacturing, storing, selling, delivering, and distributing electricity, for light, heat, power, and for all such other chemical and mechanical purposes as electricity can be applied to, and for the purpose of manufacturing and selling all kinds of electrical appliances, apparatus, and supplies;" that they informed appellees "that they proposed to organize a corporation for the purpose contemplated by them;" that appellees "with a full knowledge of all of the facts aforesaid, and in contemplation thereof," executed the writing we have before set out. In a subsequent portion of the paragraph it is alleged that said corporation "was then and there duly formed and incorporated in all respects under and pursuant to the laws of Indiana for the objects and purposes contemplated as aforesaid and as provided in said agreement." As we have seen, the writing did not provide what the character of the corporation was to be. The pleading therefore plainly refers to the objects and purposes we have above set out. We think that the allegation that the corporation was incorporated for said objects and purposes controls the conclusion that the corporation was incorporated "in all respects under and pursuant to the laws of Indiana." The corporation was therefore, as before stated, not of a *de jure* character, and as the act of incorporation plainly contravened the policy of the State not to grant so broad a charter, it is our opinion, notwithstanding appellees' waiver, that appellants are not in a situation to ask the aid of a court of equity in the consummation of their project. We have now considered the rulings of the court below on each of the paragraphs of complaint filed, and we find no error.

Judgment affirmed.