SOMERSET & KENNEBEC RAILROAD CO. *versus* HIRAM R. CUSHING. SAME *versus* JOSEPH WESTON.

If the charter of a railroad company does not fix the number of shares of the capital stock, it is to be presumed that the Legislature intended that the stockholders or the directors should fix the number. And it is indispensable that the number be so determined before any assessment can be made thereon.

In such case, if the number of shares so fixed exceeds the number actually subscribed for and taken, the stockholders or directors may change the number; but the assessment must be upon the whole number. If the shares are not all taken, an assessment upon the number that have been taken is illegal and void.

A subscriber who has paid the first assessment is not thereby estopped from setting up this defence to a suit for the second.

REPORT by RICE, J.

These actions were ASSUMPSIT, to recover of the defendants, respectively, their subscriptions to the stock of the plaintiff corporation. Weston subscribed for two shares, and Cushing for one share. The first assessment of ten dollars on each share was paid by Cushing, but not by Weston. Sub-

sequent assessments were made thereon which were not paid; and the treasurer thereupon advertised and sold the shares according to the provisions of the by-laws. The proceeds of the sales not amounting to the sum of the assessments, these suits were to recover the balance.

By the charter, the capital stock was to consist of not less than 1500, nor more than 8000 shares. The stockholders, in their by-laws, fixed the number at 7000. At the time of the assessments only 4091 shares had been subscribed for and taken; and the assessments were made upon the latter number, and not upon the whole number. The other material facts appear in the opinion of the Court.

These cases were argued for the plaintiffs by *Bradbury, Morrill & Meserve.*

The action is upon the written contract of defendants to take and pay for certain shares in the capital stock of the plaintiff corporation.

The company was incorporated in 1848.

From the pleadings the corporation is to be regarded as having been duly organized.

It is admitted that the company had, long before the commencement of this action, begun to build the road, and has finally completed the same.

It is also admitted that the several assessments were duly made, and due notice thereof given, and that defendants have neglected to pay.

To entitle plaintiffs to recover the assessments thus made, it is only necessary, in addition to the foregoing facts, to show that the argreement contemplated in the contract of subscription has been executed.

That there is a contract, is not denied. It is admitted that the persons who executed it were duly authorized and empowered by their respective companies.

Does the contract contain all the provisions stipulated for?

The contract covers all the substantial and material provisions contemplated in the subscription, and is in strict conformity with its requirements.

So far as the defence rests upon irregular proceedings of the company and of the directors in the progress of the work, such as location of the tract, filing same, the mortgages and the manner of construction, they are all, (if they exist,) in the nature of conditions subsequent, and cannot affect the right of the plaintiffs to recover. Redfield on Railways, 78, and notes 85 and 86.

The payment of the first assessment by Cushing, one of the defendants, is to be treated as an acquiescence in the doings of the company, or waiver of conditions precedent.

It is said, "Courts are reluctant to admit defences to actions for calls when there has been any considerable acquiescence on the part of the shareholder." Ibid, 86, § 2.

And that a stockholder cannot object, "after having voted at the election of officers, or otherwise acted as a shareholder."

So, "if one act as a shareholder in the organization of a company." Ibid, 87, § 4, and cases there cited. *York and Cumberland Railroad Co.* v. *Pratt*, 40 Maine, 453.

*J. H. Webster*, for the defendants, argued:—

That the payment of the first assessment by Cushing, placed the plaintiffs in no better condition than they would be if he had not paid. They have sold the share subscribed for by him, and cannot now transfer it to him upon his payment of the assessments. If the share had not been sold, the plaintiffs could recover of him only as upon an open executory contract, founded on his promise to take the stock and pay the assessment; and, upon payment, to have the stock transferred to him. The promise was mutual. Having sold and transferred the share, the company cannot now comply on their part. The plaintiffs, therefore, must now rely upon their statute rights and the statute liability of defendant. *P. S. & P. R. R. Co.* v. *Graham*, 11 Met. 1.

It being agreed that the Court may draw inferences as a jury might, the facts in the case will warrant the inference that when Cushing paid the first assessment, he did so in the belief that the full number of shares had been subscribed for.

By the payment of that assessment, he has not waived any of his rights as to assessments payable subsequently. It does not authorize the company to force a statute liability upon him, by a statute remedy, and, in doing this, to disregard the requirements of the statute.

The plaintiffs are pursuing against these defendants a statute remedy which must be strictly pursued, or it must fail. The plaintiffs have not procured to be subscribed for and taken up the number of shares necessary to bind the defendants. By the contract, the defendants agree to take one or more shares of plaintiffs' capital stock.

If the number of the shares of such stock had been fixed by the charter at 7000, it would have been incumbent on the plaintiffs to procure that number to be subscribed for, before making assessments; and, as that number has never been taken, it would be clear that these actions could not be maintained. *Salem Mill-dam Co.* v. *Ropes*, 6 Pick. 23; *Oldtown & Lincoln Railroad Co.* v. *Veazie*, 39 Maine, 571.

Wherein do the cases at bar differ from the cases above cited? Section 2d of the charter enacts, that "the capital stock of said corporation shall consist of not less than 1500, nor more than 8000 shares."

Who is to determine or fix the number of shares of said stock? The Legislature have not retained that power in their own hands, nor bestowed it anywhere else; the corporation alone, either by their acts, corporate votes, or the votes of its directors, can do it. Although the power to fix the number of shares of the capital stock is not in terms by the charter conferred upon said corporation, is it not in fact as certainly conferred by implication as if expressed in terms?

The plaintiffs, by a corporate vote, on the 30th of March, 1852, adopted their by-laws, and, by these by-laws, fixed the capital stock at 7000 shares, at $100 each. In February, 1853, nearly a year afterwards, as appeared by the subscription paper, the defendants subscribed to its stock.

When defendants subscribed, how did they understand the contract into which they were entering with the plaintiffs?

Did they understand that they were, for each share taken, engaging to take one of an indefinite number of shares of indefinite value? or, that they were subscribing $100 to an indefinite amount of stock? or, was it one share of a stock of 7000 shares, actually subscribed for and taken up, upon which share assessments, to complete the whole enterpise, might be made to the amount of $100? Can any one doubt that the latter was the understanding of the defendants? How did the plaintiffs and their directors understand this contract? As intelligent and reasonable men, could they understand the contract different from what we have supposed to be the understanding of defendants? Can the plaintiffs in a court of law enforce upon the defendants a different contract from any which either party supposed or intended to make at the time? The records of the company show that only about 3000 shares were taken by paying subscribers, and 1000 more were to be received by the contractors in part payment of their contract. About 4000 shares in all were subscribed, leaving a balance from the required number of nearly one-half. If, therefore, plaintiffs prevail, defendants are compelled to pay twice as large a proportion as they would be required to pay, if the plaintiffs had fulfilled the contract on their part.

How stands the case by authorities? Do not the same consequences follow the fixing the number of shares by the corporation, as in this case, as if the same had been fixed by the charter?

In *The Wor. & Nash. R. R. Co.* v. *Hinds*, 8 Cush. 110, the number of shares of the capital stock were neither fixed by the charter, nor determined by the directors, and the Court held, in that case, that the defendant could not be legally held to pay the assessments.

The provisions of the Act under which that decision was made are as follows, viz.—The capital stock of said corporation "shall consist of not more than fifteen hundred shares, the number of which shall be determined from time to time by the directors thereof," &c.

What is the effect of the clause "the number of which shall

be determined from time to time by the directors thereof?" Is it any thing more than saying the directors, and not the company by its corporate vote, shall determine the number of shares? Had that clause been omitted, would the necessity of fixing the shares of its capital stock, to entitle the corporation to make and enforce the collection of assessments, have been less imperious? It is believed that the addition of that clause does not change the company's obligation to determine the number of the shares of its capital stock. If we are right, no action can be maintained by a corporation, whose capital stock is not determined and fixed by its charter, until it is done by the corporation. Can an assessment, made before the number of shares so fixed and determined by the corporation is taken, be enforced? Wherein does the determination of the number of shares made by the company under the provisions of its charter differ, in its effects upon the subscribers to its stock, from the fixing the same in the charter itself? It is very difficult to perceive the difference.

The plaintiff corporation chose to fix the shares of its capital stock by its corporate vote. They fixed it at 7000. The defendants each subscribed for one or two of these shares. They agreed to pay if the whole were taken, not without. And to pay, if necessary to complete the whole enterprise, $100 of a gross sum of $700,000, and not $100 of a gross sum of $400,000. Plaintiffs have procured, at most, but about 4000 shares, and assessed on each share $100. If plaintiffs prevail, defendants will be compelled to pay to the utmost extent, to which, under any and all contingencies, their contract would bind them, while the plaintiffs will be let off with a little more than half performance of its part of the contract.

Is that the way to pursue a statute remedy with necessary strictness and precision?

The case of *Kennebec and Portland Railroad Co.* v. *Jarvis,* 34 Maine, 360, does not in the least militate against our position.

The counsel here commented at length upon the particulars which he claimed distinguished that case from the cases at bar, and contended that it had no applicability to the questions in controversy.

The opinion of the Court was drawn up by

TENNEY, C. J. — The action against Cushing is brought to recover nine assessments of $10 each, upon one share of the capital stock in said company, he having paid the first assessment and no other. The defendant in the other action has omitted to pay either of the ten assessments made upon each of his two shares of the capital stock, and the aggregate amount of those assessments are sought to be recovered.

The plaintiffs rely upon a paper, dated February, 1853, signed by the defendants, and others, in which the subscribers agree to take the number of shares set against their names, in the capital stock of the Somerset and Kennebec Railroad Company; and pay to the treasurer of said company all assessments that shall be made on said shares, in pursuance of the by-laws and charter of said company, not exceeding one hundred dollars on each share, provided that no assessment shall be made on said shares by the directors, or by the stockholders of said company, until a contract, good and sufficient in law, shall be made between the Kennebec and Portland Railroad Company and the Somerset and Kennebec Railroad Company, as specified in the written contract between the parties.

The Somerset and Kennebec Railroad Company, on March 30, 1852, by a corporate vote, adopted their by-laws. One of those by-laws is as follows: " the capital stock of the company shall consist of seven thousand shares of one hundred dollars each." It does not appear that this by-law has since been modified in any particular.

At meetings of the directors of the plaintiffs, holden on June 10, 1853, Sept. 6, 1853, Nov. 29, 1853, and March 7, 1854, assessments were made upon each share of the capital

stock subscribed for; there were ten in number, and each for the sum of $10.

It is admitted that the several assessments were made in the mode required by the charter and by-laws, and that the notices and circulars provided for thereby, in relation to said assessments, were duly given and forwarded; also, that after the neglect of the defendants to pay their several assessments, as before stated, their several shares were sold upon proceedings prescribed by the by-laws.

It is also admitted that, long before the assessments were made, the company had contracted for the construction of their road from Augusta to Skowhegan, and had commenced the work of construction, and that the same was completed to Skowhegan, at the time of the trial of these actions.

It is not contended that the agreement between the Kennebec and Portland Railroad Company and the plaintiffs has not been substantially and effectually made.   But it is insisted that the assessments upon the defendants' shares are not in pursuance of the by-laws and charter of the company.

The records show that only 4091 shares of the capital stock have been subscribed for or taken.

By the charter, special laws of 1848, c. 186, § 2, the capital of said corporation shall consist of not less than 1500, nor more than 8000 shares.   It is manifest that it was designed by the Legislature that the number of shares of the capital stock should be definitely fixed by the corporation or by its directors.   And it is not contended by either party that the determination of the amount of capital stock, by the vote of the stockholders, was not necessary in order to prosecute the enterprise, nor that it was not legal.   It certainly was indispensable as a basis of the right, under the charter, to raise money by assessment for the construction of the road, &c. *Worcester and Nashua Railroad Co.* v. *Hinds*, 8 Cush. 110.

Were the assessments upon the defendants' shares made according to the provisions of the contract which they made with the company ?   The president and directors for the time being are authorized, by the charter, " to make such equal as-

sessments from time to time, on all the shares of the corporation, as they may deem expedient and necessary in the execution and progress of the work," &c.   The by-laws, under the head of assessments, confer upon the president and directors the same power in substantially the same terms.

The assessments made upon the defendants' shares were at times when the capital stock consisted of 7000 shares, and $100 each.   This number of shares, and the sum at which they should be estimated, not being fixed by the charter, could be changed from time to time by a vote of the stockholders, or of the directors.   But it does not appear to have been changed, and, therefore, the assessments, in order to be legal, must be founded upon this determination, as much as though the capital stock was fixed by the Legislature.   And could the assessments of the shares of the defendants, amounting to the full sum for which they could be made if all the capital stock had been taken, be regarded as " equal assessments on all the shares of the corporation ?"

It is insisted, however, by the plaintiffs, that, by the terms of the contract, they are entitled to recover; and the case of *Kennebec and Portland Railroad Co.* v. *Jarvis*, 34 Maine, 360, is invoked in support of this ground.   The contract relied upon in the case cited is distinguishable from the one under consideration.

In that case, the defendant, with others, signed the contract, which was in the following words and figures : — " We, the subscribers, hereto agree and promise to take the number of shares set to our names respectively, in the Kennebec and Portland Railroad Company, which shares are to be each of the value of $100, and to be paid for at the rate, at such times, to such persons, and in such installments, as shall be hereafter required, by a vote of the company.   Gardiner, Jan. 5, 1847."

By the charter of that company, § 4, it is enacted that the capital stock may consist of $1,200,000, and shall be divided in shares of $200 each.   By an amendatory Act of July, 1846, the capital stock was to be divided into shares of $100. By the 13th by-law, the capital stock was to consist of 12,000

shares of $100 each, and the number of them might be increased from time to time, as the directors should determine, and the Legislature authorize. Provided, &c.

The shares in that corporation were less in number than 12,000, and one ground of defence was that the assessments, being made upon a number less than that required, were unauthorized and void; inasmuch as the promise was upon a condition precedent, that the whole capital should be raised by a subscription for all the shares. It was said by SHEPLEY, C. J., in delivering the opinion of the Court, that "the contract could not have had reference to any certain number of shares, or certain amount of capital as fixed by the charter, and there is no language used in the contract prescribing the number of shares, or the amount of the capital. The promise is not to pay 'all legal assessments.' It is to pay for the shares as he should be required, by a vote of the company, without any reference to assessments, or payments to be made on other shares." "The agreement provided for the payment of the amount of the shares, without any reference to a fixed capital, or to any number of shares, or to any assessment to be made on other shares."

It is very obvious that the construction, put upon the contract in that case, is different from that required on the one executed by the defendants.

It is insisted that, in the case against Cushing, the voluntary payment by him of the first assessment on his share estops him from setting up the defence relied upon.

The case does not find under what circumstances he paid the assessment. It may have been under a want of knowledge that the 7000 shares were not subscribed for, or it may have been with a view to raise money to defray expenses necessarily incurred in arrangements preparatory to the execution of the objects of the incorporation. *Salem Mill-dam Co.* v. *Ropes,* 6 Pick. 23; *Oldtown and Lincoln Railroad Co.* v. *Veazie,* 39 Maine, 571.

Other grounds of defence have been relied upon, but their

consideration is not material to the final disposition of this case.

According to the agreement of parties, the cases are each to be disposed of by the entry of *Judgment for defendants.*

HATHAWAY, APPLETON, MAY, and DAVIS, J. J., concurred.