*371 The opinion of the court was delivered by
Bermudez, C. J.
This is an appeal from a judgment dismissing a rule traversing the answers of a garnishee and releasing the latter' from liability.
The plaintiff, having obtained a judgment for $12,500 against the defendant company, issued execution and under it garnisheed Joseph L. Harris, propounding interrogatories on facts and articles.
In his answer to the fourth interrogatory, the object of which was to ascertain from him the amount of his subscription for shares of stock in the defendant company and] how much he had paid for them, the garnishee says that he never subscribed for the stock of the company, nor took any shares therein; that it is true he signed a paper purporting\to be an agreement to subscribe for stock; said paper was presented to him for signature by Mr. Minnegerode, but it was distinctly agreed and understood at the time this respondent signed the paper, that said paper was not to be delivered to the defendant, nor was it to become an operative agreement to take stock in the defendant company, unless and until other persons should subscribe the same on a similar paper, so as to make the subscription to the enterprise a subscription for $40,000 [to be paid in cash, and also unless and until a contract should be entered into with Rogers, Ballentine & Oo., responsible contractors, to build the road, and take in part payment $25,000 in stock of the company, which amount of stock, with the cash subscription, would make up the'total amount of ■the capital stock fixed by the charter, to-wit: $65,000.
The respondent says that the conditions above mentioned were never fulfilled, and on the 4th of December, 1884, Mr. Minnegerode, by letter of that date addressed to this respondent, informed him that he was at liberty to rescind his subscription, which this respondent did by letter of the 8th of December, 1884, a copy of which is annexed. And this respondent not only never participated in the affairs of /the defendant company, but was really ignorant that it had organized or done any business under its charter.
The respondent says that the capital of the company was fixed by the charter at $65,000, and that inlaw it had no power to commence operations, or to bind by its acts any subscriber for stock, until and unless the whole amount of the capital stock had been subscribed, and this respondent avers that, at no time, was one-third of the cap *372 ital stock of the defendant company taken or subscribed for, conditionally or otherwise.
The letter referred to in'the answer is as follows:
New Orleans, December 8, 1884.
O. Minnegerode, Jr., Esq., Dear Sir: On my return, after a short absence from the city, I found your favor of 4th inst., and in reply beg to say that besides your own identification with the enterprise you have on hand, I wasjmainly induced to subscribe to same owing to Mr. Rogers’ connection with the undertaking; therefore, in view of his withdrawal, coupled with the misfortune of yesterday’s newspapers publishing the failure of the concern, together with the fact of so short a time remaining in which to put the work through, I beg to accept your offer, and accordingly to cancel my subscription to the stock of your company, and remain, etc., J. L. Harris
The charter of the company is dated 19th November, 1884, and recorded 20th of that month. Article 9 is as follows:
“ The capital stock of the said association is hereby fixed at $65,000, divided into 650 shares of §100 each. All stock subscribed shall be paid for at such time and on such terms as the Board of Directors may determine, provided that all such stock subscribed shall be fully paid for by the 1st of February, 1885.”
The subscription paper signed by Harris is as follows:
We, the undersigned, hereby agree to subscribe the amounts set opposite our names to the capital stock of the Canal Street and Exposition Railway Company — 25 per cent, to be paid in cash and the balance in three instalments of 25 per cent, each, at intervals of ten days each after first payment.
J. L. Lyons, 25 shares ------- $2,500 00
Samuel H. Kennedy, 25 shares ------ 2,500 00
Warder Gumming, 10 shares - 1,000 00
J. L. Harris, 25 shares ------ 2,500 00
New Orleans Railway Supply Company, by John C. Febiger, 10 shares........ 1,000 00
John C. Febiger, 10 shares ----- 1,000 00
From that list it appears that the number of shares which the parties who signed it agreed to subscribe for, was 105, of the value of $10,500.
There is nothing to show that the party who presented the paper- *373 for signature had any authority from the company to solicit subscriptions; that the paper ever was delivered to the company; that the subscriptions were -accepted by the company; that the company was authorized to proceed to business and levy assessments upon a partial filling up of its capital and before its entire stock was taken up; that the Board of Directors ever determined to call for any payment of the stock subscribed for; that the garnishee has ever done any act, from which it can be inferred that he has waived his right to insist upon the fulfilment of those conditions precedent.
If the party who presented the list for subscriptions represented the company, then, what passed between him and the garnishee and which is stated in the uncontradicted answer to the interrogatories and verified by proof, is binding on the company, as the whole constitutes one and the same transaction. If so binding, the company would have no recourse against the'garnishee, as a subscriber, and that which it could not do, the plaintiff in writ, who stands in its shoes, can not urge. The answer, which can not be divided, justifies an exoneration O. P. 365.
The quoted article of the charter, coupled with the caption of the subscription list which followed it, irresistibly forces the conclusion that it never entered the mind of the subscribers to pay until the entire stock had been taken and until the directors had called for payment. The contingencies not happening, no liability is incurred.
As was quite well said in Stoneham Branch R. R. Co. vs. Gould, 2 Gray, 277, Mass.:
“It is a rule, of law, too well established tobe now questioned, that, when the capital stock and the number of shares are fixed by the act of incorporation * * * no assessment can be lawfully made on the shares of any subscriber until the whole number of shares has been taken. This is no arbitrary rule. It is founded upon a plain dictate of justice and the strict principles regulating the obligations of contract.”
In Littleton, Manufac., vs. Parker, 14 N. H. 543; Oldtown & L. R. R. Co. vs. Veazie, 39 Me. 571; Sandford vs. Handy, 25 Wend. 475, and numerous other cases, it was likewise held, that the entire stock must have been taken ^before the subscriptions can be binding, or any legal assessments made. Also Morawetz on Oorp., Nos. 137, 138, and notes.
*374 In a recent case, in which a kindred question was elaborately and thoroughly investigated, all the authorities having a bearing upon it having been critically examined, the New York Court of Appeals held in the same manner. Bray vs. Farwell, 81 N. Y. 600, 615.
Judgment affirmed.